FILED

2010 Jun-23  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SOURCE MEDICAL SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV-09-RRA-0073-S |
| v. | ) | |
| | ) | |
| AMKAI, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This is a civil action filed by  Source Medical Solutions, Inc. against Amkai, LLC, Amkai, Inc., and Peter Sereny.  The second amended complaint alleges that the Amkai defendants engaged in unfair competition under section 43 of the Lanham Act (15 U.S.C. § 1125(a)), (Count One); intentionally interfered with the plaintiff's contractual or business relations (Count Two); and violated the Illinois Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 to 510/7) (Count Three).  Further, the second amended complaint adds two new counts. Count Four asserts breach of contract against the Amkai defendants, while Count Five alleges breach of contract against Sereny. The last count, Count Six, alleges that Sereny violated a fiduciary duty. The case is presently before the court on Amkai's motion to dismiss <u>only</u> Count Four, the contract claim against the Amkai defendants, pursuant to Rule 12(b)(6), for failing to state a claim upon which relief may be granted.  (Doc. 37.)

APPLICABLE STANDARD

The Eleventh Circuit recently issued the following summary of the standards for

analyzing a motion to dismiss:

> Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In *Twombly*, the Supreme Court expressly "retired" the "no set of facts" pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*. *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969. Justice Black wrote for the Court in *Conley* of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46, 78 S.Ct. at 102. In rejecting that language, the Court in Twombly noted that courts had read the rule so narrowly and literally that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." 550 U.S. at 561, 127 S.Ct. at 1968 (internal quotation marks and alterations omitted).

> In *Twombly*, the plaintiffs alleged an antitrust conspiracy among certain regional telecommunications providers in violation of the Sherman Act, 15 U.S.C. § 1 (2006). *Id.* at 550, 127 S.Ct. at 1962. Their complaint relied on allegations of the defendants' parallel behavior to allege the conspiracy. *Id.* The Supreme Court granted certiorari to address the proper standard for pleading an antitrust conspiracy through allegations of parallel conduct. *Id.* at 553, 127 S.Ct. at 1963. Justice Souter, writing for a substantial majority, first noted:

>> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

> *Id.* at 555, 127 S.Ct. at 1964-65 (internal quotation marks, citations, and alterations omitted). The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1965. The Court ultimately held that to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. Cautioning that its new plausibility standard is not akin to a "probability requirement" at the pleading stage, the Court nonetheless held that the standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Id.* at 556, 127 S.Ct. at 1965. The Court was careful to note that "we do not require heightened fact pleading of specifics," but concluded that when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed." *Id.* at 570, 127 S.Ct. at 1974. Finding that the plaintiffs' complaint did not plausibly suggest an illegal conspiracy by merely alleging parallel conduct-because such parallel conduct was more likely explained by lawful, independent market behavior-the Court held that the district court properly dismissed the complaint. *Id.* at 567-70, 127 S.Ct. at 1972-74.

The Supreme Court has since applied the *Twombly* plausibility standard to another civil action, *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *Iqbal* involved a *Bivens* action brought by a Muslim Pakistani who had been arrested and detained following the September 11, 2001, terrorist attacks. *Id.* at 1943. He sued current and former federal officials, including John Ashcroft, former Attorney General of the United States, and Robert Mueller, the Director of the FBI. *Id.* at 1942. Iqbal alleged that Ashcroft and Mueller adopted and implemented a detention policy for persons of high interest after September 11, and that they designated him a person of high interest on account of his race, religion, or national origin, in violation of the First and Fifth Amendments to the Constitution. *Id.* at 1944. Iqbal's complaint alleged that Ashcroft was the "principal architect" of the policy and identified Mueller as "instrumental in [its] adoption, promulgation, and implementation," but also stated that both men "knew of, condoned, and willfully and maliciously agreed to subject" Iqbal to harsh conditions of confinement "as a matter of policy ... for no legitimate penological interest." *Id.* at 1944 (alteration in original).

In evaluating the sufficiency of Iqbal's complaint in light of *Twombly*'s construction of Rule 8, the Court explained the "working principles" underlying its decision in that case. *Id.* at 1949. First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly*, 550 U.S. at 567, 127 S.Ct. at 1972). Finally, the Court in *Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions, not merely antitrust actions, because it is an interpretation of Rule 8. *Id.* at 1953.

Applying these principles to Iqbal's complaint, the Court began by disregarding as wholly conclusory Iqbal's allegations that Mueller was "instrumental" in adopting the detention policy and Ashcroft was the "principal architect" of the policy, and that they willfully agreed to subject Iqbal to harsh treatment for a

3

discriminatory purpose. *Id.* at 1951. The Court then determined that the remaining factual allegations-that Mueller and Ashcroft approved the FBI's policy of arresting and detaining thousands of Arab Muslim men as part of its investigation into the events of September 11-did not plausibly establish the purposeful, invidious discrimination that Iqbal asked the Court to infer. *Id.* at 1951-52. The alternative inferences that could be drawn from the facts-namely, that the arrests were likely lawful and justified by a nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts-were at least equally compelling. *Id.* Accordingly, the Court ruled that Iqbal's complaint must be dismissed. *Id.* at 1954.

*American Dental Ass'n v. Cigna Corp.*, No. 09-12033, 2010 WL 1930128, *3 -5 (11th Cir. May 14, 2010).


## ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Source Medical alleges that on November 24, 2003, Sereny, while still a member of the plaintiff's board of directors, formed Amkai, Inc.  On December 1, 2003, Source Medical and Amkai, Inc. entered into a licensing agreement (the "License Agreement") under which Source Medical granted Amkai, Inc. a license to use Source Medical's electronic medical record source code (the "EMR code").  The second amended complaint alleges that in the License Agreement, Amkai, Inc. "covenanted and agreed, amongst other things, that it would not assign, encumber by security interest, or otherwise transfer any rights received under the Licensing Agreement, including the right to use the EMR code, without Source Medical's prior, written consent."  (Doc. 34, p. 15.)

On February 15, 2004, Sereny resigned from the board of Source Medical.  The plaintiff further contends:

> 33.    Source Medical is informed and believes that in or about 2007, Sereny transferred Amkai, Inc.'s right under the License Agreement, including the right to use the EMR code, to Amkai, LLC.  Unlike Amkai, Inc. which

4

operated solely through Sereny, Amkai LLC is a multifaceted company consisting of numerous investors and officers and competes directly with Source Medical.

34.    Additionally, Source Medical is informed and believes that Amkai entered into financing agreements with various investors and that Amkai was required to pledge its assets, including the EMR code and products utilizing the EMR code, as collateral under these agreement [sic].

(Doc. 34, p. 10.)  Source Medical pleads generally that it "has been damaged, and continues to be damaged, by these breaches."  (Doc. 34, p. 15.)


ANALYSIS

Count Four alleges breach of the License Agreement.  The specific section of the agreement at issue is Section 10.08, which states:

[t]his Agreement and the rights granted hereunder shall not be assigned, encumbered by security interest, or otherwise transferred by Amkai without the prior written consent of the [sic] Source, which written consent shall not be unreasonably withheld.

(Doc. 37-1, p. 7.)[1]

The defendant asserts that the plaintiff alleges that "Amkai breached the [License] Agreement by changing corporate structures from Amkai, Inc. to Amkai, LLC."  (Doc. 37, p. 5) (citing doc 34, ¶ 33 quoted above).  In the court's opinion, the language cited in paragraph 33 states that it is <u>the plaintiff's belief</u> that one entity, Amkai, Inc., impermissibly transferred

---

[1]In its motion, the defendant attached and referred to the License Agreement, and the agreement has been used by the court in this opinion.  However, that does not automatically convert this motion to a motion for summary judgment.  *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").  The contract at issue in this case is certainly "central" to the plaintiff's breach of contract claim.

is rights to another entity, Amkai, LLC.  Amkai, Inc. and Amkai, LLC are separate and distinct entities.  There is no mention in the complaint of the creation of Amkai, LLC by Amkai, Inc.  Accordingly, the parties' focus in their briefs on whether Amkai could permissibly change its corporate structure is misplaced.

It is noted, however, that the second amended complaint states only that the plaintiff "is informed" and "believes" that Amkai, Inc. transferred its rights to Amkai, LLC.  No basis for this "belief" is stated.   The assignment might or might not have happened. Also, the allegation that there was an assignment is a legal conclusion.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ----,  129 S.Ct. 1937, 1949 (2009).

The second amended complaint states no exact date of the alleged assignment, no signatories to it, and no consideration for it. The duration of the assignment is not mentioned.  Whether this was a simple reorganization of Amkai, Inc. into Amkai, LLC is not stated.  These details are important to determine the existence and extent of the breach and damages.[2]   In this case, the only "fact" alleged is the plaintiff's "belief" based upon unsubstantiated "information."    The same analysis is appropriate for the allegations contained in paragraph 34, which states that the plaintiff "is informed and believes" that somehow Amkai, Inc. encumbered and pledged the EMR code and products utilizing the

---

[2]No specific amount, or category of damages has been alleged.

EMR code as collateral, under various unspecified financing agreements. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Based on the plaintiff's allegations, the court cannot say that this complaint states a plausible claim for relief, only a possible one. Under the precedent of *Twombly* and *Iqbal*, Count Four is due to be dismissed as to both Amkai defendants.

DONE this 23rd day of June, 2010.

Robert R. Armstrong, Jr.
United States Magistrate Judge

7